# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

FELICIA S. HENDRICKS,          )
                                       )

    Plaintiff,               )
                                       )

vs.                           )       **2:05-CV-714-F**
                                       )

TERRANCE MCDONNELL, et al.,    )
                                       )

    Defendants.            )

## DEFENDANTS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT

Come now the Defendants, Terrance McDonnell (hereinafter referred to as "McDonnell") and the Alabama Department of Corrections (hereinafter referred to as "DOC"), by and through their undersigned counsel in the above styled cause and hereby file their Brief in Support of their Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS

Felecia Hendricks was hired as a Correctional Officer I in April of 2000 (See Deposition of Hendricks, Exhibit "A," p. 9, ll. 2-7). She attended a law enforcement academy and received training to review and understand the DOC Administrative Regulations including 207 and 208 (*Id.* p. 10, ll. 5-9, ll. 13-18, p. 75, ll. 8-21). Hendricks began and completed her entire employment history with the DOC at Kilby Correctional Facility (*Id.* p.10, l. 23, p.11, ll. 1-9).

On or about February 10, 2005, Hendricks left the main building of Kilby Correctional Facility and went to its parking lot; (i.e. grounds of the DOC) (*Id.* p. 106, ll.

16-18). Hendricks stated that she purposely awaited to confront another correctional officer in the parking lot, an Officer Latoya Nelson, who was "spreading rumors" in the facility about Hendricks (*Id*. p.105, ll. 13-14, ll. 18-23, p.106, ll. 1-15). In sum, the rumors were that Hendricks had stolen money from Officer Nelson during one of their gambling trips and the rumors were being furthered by other staff and inmates (*Id*. p.105, ll. 20-23, p. 106, ll. 1-7). A soon as Officer Nelson entered the parking lot grounds, Hendricks confronted Nelson and thereafter, each engaged in a heated, verbal exchange (*Id*. p.116, ll. 6-10). The argument escalated to the point that Hendricks initiated a physical assault upon Officer Nelson by bumping her chest into Nelson's (*Id*. p.119, ll. 1-4). When the confrontation calmed down, Officer Hendricks and Nelson then proceeded to get into Nelson's car (*Id*. p.126, ll. 19-21, p. 127, ll. 3-5). However, another officer, Colbert, came to the area and inquired of the welfare of Nelson giving rise to Hendricks yelling and cursing her (*Id*. p. 128, ll. 22-23, p.129, ll. 1-2, p.132, ll. 8-11). As the two were arguing, Hendricks made her way to her car, where she pulled a knife from the driver's door. (*Id*. p.136, ll.14-16). This knife is described as a three and a half inch "Buck" knife (*Id*. p.112, ll.3-5). Although Hendricks claimed at her deposition that the knife was never opened, she did expressly say that she did "open" the knife in her taped statement to Investigator Demus on February 11, 2005, the day after the parking lot incident (*Id*. p. 143, ll. 8-23, p.144, ll. 1-20). After Hendricks pulled the knife on Colbert, another officer physically had to restrain Hendricks by grabbing her hand with the knife and pushing her into her car to leave (*Id*. p.144, ll. 21-23, p.145, ll. 1-13). Hendricks eventually left (*Id*. p.145, ll. 14-18).

Statements were taken by the DOC on February 10th and 11th, 2005 (See Exhibit

"A" of Defendant's Motion to Dismiss and Answer, Doc. #6, p.11-17). A complete investigation was performed by the Investigation and Intelligence Division of the DOC. (See Deposition of Hendricks, Exhibit "A," p.97, ll. 12-16, p.115, ll. 7-14). Investigator Demus took a taped recorded statement from Hendricks on February 11, 2005 (Exhibit "C", Affidavit of Investigator Demus and attached statement). On February 11, 2005, Hendricks was placed on mandatory leave (See Exhibit "A," p. 165, ll. 7-10). On February 18, 2005, Warden McDonnell served notice upon Hendricks of a pre-dismissal conference that outlined the complete investigation of the I & I of DOC and the violations of Administrative Regulations 207 and 208( *Id.* p. 66, ll. 15-23, p.67, l. 1).

Specifically, charges under Administrative Regulation 207 are as follows:

1. Employees shall observe all laws, rules, and regulations. (Administrative Regulation 207, Section V, Paragraph A7)

2. Employees shall uphold, with integrity, the public's trust involved in their position(s). (Administrative Regulation 207, Section V, Paragraph A9)

3. Each employee's conduct shall, at all times, be consistent with the maintenance of proper security and welfare of the institution and of the inmates under his/her supervision. (Administrative Regulation 207, Section V, Paragraph B)

4. Employees shall not carry any weapons, tear gas, ammunition, or blackjack in to the institution or onto the grounds of any ADOC state property, except as authorized by the Warden/Division Director. (Administrative Regulation 207,

Section V, Paragraph C11)

Further, charges under Administrative Regulation 208 are as follows:

1. Fighting, assault, physical violence, and disruptive behavior. (Administrative Regulation 208, Section III, Group III offenses, Paragraph A.3.b (4) (a))

2. Conduct that is disgraceful, on or off the job that does adversely affect employees: effectiveness on the job. (Administrative Regulation 208, Section III, Group III offenses, Paragraph A.3.b. (4) (n))

3. Possession or use of firearms, weapons, explosives, or other dangerous items, except on duty and in designated areas and as authorized in regulations and/or procedures. (Administrative Regulation 208, Section III, Group III offenses, Paragraph A.3.b. (4) (s))

4. Serious violations of other rules, procedures, laws, or reasonable conduct expectations. (Administrative Regulation 208, Section III, Group III offenses, Paragraph A.3.b (4) (v))

On February 17, 2005, Hendricks purportedly filed a grievance (*Id.* p.71, ll. 2-4). On March 2, 2005, a pre-dismissal conference was conducted with Hendricks by Warden McDonnell, allowing her to tell her side of the events (*Id.* p. 67, ll. 2-5). As a result, McDonnell documented the meeting and his reasons to the Commissioner of the DOC why he recommended that Hendricks be dismissed (*Id.* p.159, ll. 9-12). Attached to the documents presented to Campbell was Hendricks statement admitting to doing something

wrong and her statement that she deserved to be punished (Id. p.93, ll.13-22, p.94, ll. 1-4). Hendricks testified to the same in her testimony by saying "I know what I did was wrong" but later attempts to justify her actions by saying, "it was self-defense" (Id. p.89, ll. 16-18). She admits wrong doing because she had a knife on state property (Id. p.92, ll. 21-23). On or about March 4, 2005, Hendricks was served a copy of her dismissal letter from Commissioner Campbell outlining the charges and the regulations violated by her (Id. p. 18, ll.1-4, p. 151, ll.1-4).

Hendricks filed her original complaint alleging violation of her civil rights under the Civil Rights Act of 1964, specifically alleging denial of equal protection and due process under the United States and Alabama Constitutions (Id., attachment Exhibit "2"). Hendricks expresses that she wants recovery "for damages under 42 U.S.C. § 1983" (Id.). In sum, Hendricks claims that she was denied equal protection because male corrections officers were allowed to posses knives, and she, as a woman, has been denied the same. (Id.). Hendricks further purportedly alleges that she was denied due process in that she did not have fair and impartial people investigate her case. (Id.). She later suggests that the DOC grievance policy was not strictly followed (See Exhibit "A," Deposition of Hendricks, p.85, ll. 5-9). She ultimately demands in her prayer for relief that she is entitled to reinstatement; lost wages; return of sick and holiday time. (Id., attachment Exhibit "2").

On or about August 22, 2005, the Defendants answered the complaint and moved to dismiss (Doc. #6).Ultimately, it was recommended by the Court that any Title VII claims be dismissed as she failed to exhaust her administrative remedies but further ordered that her claims under § 1983 remained (Doc. # 11). The Court has allowed Hendricks to

amend her complaint only to clarify her equal protection claims.

## ARGUMENT

## I. STANDARD OF REVIEW

The trial court must view all evidence and all factual inferences there from in the light most favorable to the non-moving party. Miller v. King, 384 F. 3d 1248, 1259 (11th Circuit 2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175 (11th Cir. 1999). "Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick v. City of Fort Lauderdale, 333 F. 3d 1234, 1240 n. 7(11th Cir. 2003). Summary judgment is appropriate when the " pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issue as to any material fact and that he moving party is entitled to judgment as a matter of law." Jackson v.BellSouth Telecomm., 372 F. 3d 1250, 1279-1280( 11th Cir. 2004) ( quoting fed. R. Civ. P. 56(c)). There is no genuine issue for trial if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S. ct. 11348, 1356, 89 L. Ed. 2d 538 ( 1986).

## II. DISCRIMINATION

Because Hendricks' Title VII claims are barred, her claims must be addressed solely under § 1983. 42 U.S.C. § 1983 provides:

Every  person  who,  under  color  of  any  statute,  ordinance,

> regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Congress, in enacting (§ 1983), meant to give remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position." See Monroe v. Pope, 365 U.S. 167, 172, 81 S. Ct. 473, 476, S L. Ed. 2d. 492, 497. Hendricks's claims that the actions of ADOC officials violated her constitutional right to equal protection, as enforced by § 1983. Under the equal protection clause of the Fourteenth Amendment, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The central purpose of the Equal Protection Clause ... is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The Constitution protects Hendricks's right to be free from purposeful, race-and gender-based discrimination on the part of an employer. See Burns v. Gadsden State Community College, 908 F.2d 1512, 1517-18 (11th Cir.1990) (per curiam).

To establish a claim of racial or gender discrimination, a plaintiff must show (1) that he is similarly situated with other persons who were treated differently than he, and (2) that the reason for the differential treatment was based on race or some other constitutionally protected interest. Damiano v. Florida Parole and Probation Commission,785 F.2d 929(11th Cir.1986). Moreover, it is clear that the plaintiff must also prove discriminatory intent, purpose, or motive. Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S. 252, 256 (1977); E & T Realty v.

Strickland, 630 F.2d 1107(11th Cir.1987), cert. denied, 485 U.S. 961 (1988). In the instant case, Hendricks has failed to prove (1) similarly situated persons were treated differently (2) that any different treatment was based on a constitutionally protected interest or (3) a discriminatory interest, purpose, or motive.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in discrimination cases. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the McDonnell Douglas approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. 1817. For the usual disparate-treatment case, a plaintiff establishes a prima-facie case of discrimination by showing that he was subjected to adverse job action, that his employer treated similarly situated employees of another race or gender more favorably, and that he was qualified to do the job. Holifield v. Reno, 115 F.3d 1555, 1561-1562 (11th Cir.1997).

If the plaintiff establishes a prima-facie case of discrimination, the burden then shifts to the defendants to rebut the presumption by articulating legitimate, non-discriminatory reasons for their employment action. Holifield, 115 F.3d at 1564. Once the defendants satisfy this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman v. AI

Transport, 229 F.3d 1012, 1024 (11th Cir.2000) (citations omitted).

The establishment of a prima-facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir.1987); Pace v. Southern Ry. System, 701 F.2d 1383, 1389 (11th Cir.1983). After the defendants proffer nondiscriminatory reasons for their actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that each of the [defendants'] proffered nondiscriminatory reasons is pretextual." Chapman, 229 F.3d at 1037.

Here, Hendricks has failed to establish a prima-facie case, and the court must conclude that summary judgment is due against her. Even if Hendricks had established a prima facie case, the Defendants have articulated compelling reasons for the dismissal of her. To put it bluntly, Hendricks attempted to use a deadly weapon on the grounds of the DOC against one corrections' officer in a planned confrontation with another corrections' officer. Warden McDonnell considered it a criminal act with a deadly weapon and had an obligation to protect other employees (see Deposition of McDonnell p. 111, ll. 5-19). She has offered no credible evidence that would support the conclusion that the Defendant's reasons were pretextual for gender discrimination.

Further, the only relief Hendricks seeks is prospective injunctive relief against the defendants in their 'individual' and 'official' capacities. Because only the State of Alabama can provide such relief and because the State is in this litigation only to the extent the defendants have been sued in their official capacities, *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), (official-capacity lawsuits are, "in all respects other than name, ... treated as a suit against the entity"), the requested

9

relief can be provided by the Defendants in their official capacities only. The Defendant is therefore due summary judgment in his individual capacity, because his presence in his individual capacity is unnecessary. Summary Judgment is due against Hendricks in this respect for her failure to establish a prima facie case.

## III. DUE PROCESS

Although unclear, Hendricks argues that she has been denied due process because McDonnell, or the DOC, failed to strictly follow the grievance procedure outlined in Administrative Regulation 213. It suggests as follows:

> III. B. Grievance:  For the purpose of this regulation is defined as any issue of dispute or conflict that an employee may have pertaining to the interpretation and/or application of:
> 1. ADOC regulations, procedures, or directives that affect an employee's compensation, evaluation, leave, discipline, duty assignment, work hours, and work conditions.
> 2. Rules of the State Personnel Board or the State Personnel Department's procedure manuals. (See Deposition of McDonnell, Exhibit "B" pp. 106- 107, ll. 21-23; 1-3; Exhibit "6")

In Section V, paragraphs A through C, the above regulation outlines the required steps for the employee and the responding DOC Grievance Officer, Warden, or Division Director (*Id.*, pp. 107-108, ll. 7-23; 1-7) Although there are variations, each of the numbered steps mandates an investigation into the basis of the grievance and an ultimate response from DOC (*Id*). In sum, the intent of the process is to provide the employee an opportunity to report a potential grievance and a way to hopefully resolve it.

The process is not the exclusive way to resolve an employee dispute with DOC, but rather, it is only one way. Another equally important process that allows the employee the opportunity to have notice of charges and a fair hearing of the same is the

10

processes of dismissal outlined in Administrative Regulation 208(*Id.* Exhibit "2"). This regulation expresses the procedure of dismissal for any discharged employee and in the case *sub judice,* the procedure was strictly followed by Warden McDonnell (See Deposition of McDonnell, Exhibit "B", pp. 24-25, ll. 20-23;1-5, Exhibit "2,"). Hendricks claims that she was denied due process is without merit, as she was repeatedly given notice of the charges, an opportunity to be heard, and a fair review of her case prior to her dismissal.

On February 10, 2005, Hendricks wrongfully pulled a knife on another officer in the parking lot of Kilby Correctional Facility.  On February 18, 2005, Warden McDonnell served a written notice on Hendricks outlining the charges, the results of the investigation, and his intent to recommend dismissal (*Id.*, attachment Exhibit "1") On or about the same time, Hendricks purportedly filed her <u>first</u> grievance raising a self defense argument and seeking an investigation (See Exhibit "A," Deposition of Hendricks, attachment Exhibit "8," p. 17; see Exhibit "B", Deposition of McDonnell, Exhibit "5"). This was odd following notice that a complete investigation had been done. Even though Hendricks claims in her original complaint that the investigation was unfairly conducted, denying her due process, she offers no evidence that the investigation was unfair.

On March 2, 2005, a Pre-dismissal conference was held (See McDonnell deposition, Exhibit "3"). McDonnell allowed Hendricks to tell her side of the event and reviewed taped statements taken during the investigation that confirmed the results of the investigation (*Id.* pp. 102, ll. 20-23; 1-4). Hendricks simply responded by saying "I request to remain as a Correctional Officer I and remain at Kilby. I bid for a shift at Kilby

for 1 year 1-2-05 to 1-02-06. I have 2 daughters. I am not financially able to drive to another institution. I have a trailer. I will attend an Anger Management Class if deemed necessary. I did pull a knife for my on defense on 2-10-05 in the parking lot. We both bumped chest to chest."(*Id.,* attachment Exhibit "4"). Strangely enough, Hendricks did not raise any claims of discrimination but simply argued for leniency as she purportedly acted in self defense and had personal responsibilities. Hendricks then filed a grievance raising similar arguments without any reference to claims of discrimination, gender or otherwise(See Exhibit "A", Deposition of Hendricks, Exhibit "8" and see Exhibit "B", Deposition of McDonnell, Exhibit "4,").

On or about March 4, 2005, Hendricks was served a copy of a dismissal letter from former Commissioner Donal Campbell (See Exhibit "A", Deposition of Hendricks, p. 151, ll. 1-4; attachment Exhibit "10"). In this letter, Commissioner Campbell outlines the charges, the results of the investigation, a review of her work history, and his decision to dismiss her (*Id.*). Most importantly, Campbell suggests that if Hendricks thinks her dismissal is unwarranted, she may "appeal the dismissal to the State Personnel Department within ten (10) days by filing an answer to the charges made against you." (*Id.*). Hendricks did not appeal to the State Personnel Department (See Affidavit of Dora Jackson, Exhibit "D,"). However, she thereafter did attempt to file another grievance on or about March 17, 2005 but only after she had been dismissed (See Exhibit "A," Deposition of Hendricks, p 85, l. 11-12). This was too late.

> The Supreme Court, in line of procedural due process cases, looked to the available state remedies to determine whether they provided sufficient due process to satisfy the Constitution. See e.g., Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed.2d 420 (1982); Ingraham v. Wright 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). These cases involved whether there was a constitutional violation, not whether

there was exhaustion. Instead of dismissing for failure to exhaust, the Court held against the claimant on the merits because the available, yet unused, state remedies comported with due process. Lewis v. Hillsborough Transit Authority, 726 F. 2d 668 (11th Cir. 1984)

The Defendants admit that Hendricks had a property right in her continued employment with DOC.

> "Employment is one of the greatest, if not the greatest, benefits that governments offer modern-day life. When something as valuable as the opportunity to work is at stake, the government may reward some citizens and not others without demonstrating that its actions are fair and equitable. And it is procedural due process that is our fundamental guarantee of fairness, our protection against arbitrary, capricious, and unreasonable government action."
> See The Board of Regents of State Colleges et. al. v. Roth, 408 U.S. 564, 589, 92 S. Ct. 2701, 2715(1972).

> There can be no doubt that at a minimum, they require that deprivation of life, liberty, or property by adjudication be proceeded by notice and opportunity for hearing appropriate to the nature of the case. Mullane v. Contrac Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct 652, 656, 94 L. Ed 865 (1990). [D]ue process requires that when a State seeks to terminate (a protected) interest…., it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." Bell v. Burson, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591, 29 L. Ed. 2d 90.

However, Hendricks received multiple notices and opportunities to be heard in regards to her dismissal and she should not be allowed to claim that she did not get all the process that was due her in a grievance process designed to address issues and conflicts. Hendricks claims of the denial of due process as a result of the alleged failure to strictly follow the steps outlined in the grievance process puts form over substance. The actions of Warden McDonnell clearly apprise Hendricks of the charges, the investigation, and the basis for her dismissal. Hendricks received all the process due to her, and should not be able to make complaints about this process. This is especially true, since she failed to

appeal to the State Personnel Department. The Defendants are entitled to Summary Judgment on her claims of denial of due process.

## IV. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The Defendants assert that they are entitled to qualified immunity for all those potential claims which seek damages.  It has long been the law that public officials are entitled to qualified immunity from damages if "their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would know." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court in Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), clarified the appropriate standard by concluding that qualified immunity "turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken".  The Court went on to note that, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  483 U.S. at 640.

Qualified immunity is an affirmative defense which must be asserted by the official claiming it. Siegert, U.S. at, 114 L.Ed.2d at 286; Harlow, 457 U.S. at 815; Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In determining qualified immunity, the Eleventh Circuit follows a two-step analysis:

> "1. The Defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)...." And

> 2. Once the Defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the Plaintiff to show lack of good faith on the Defendants part.  This burden is met by proof demonstrating that the Defendant public official's actions 'violated clearly established constitutional law.'"

Suissa v. Fulton County, Georgia, 74 F.3d 266, 269 (11th Cir. 1996), Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir. 1992).

The Defendants represent that all actions taken on their part were done within the scope of their discretionary authority.  As outlined in Jordan v. Doe, 38 F.3d 1559 (11th Cir., 1994), "discretionary authority" can be shown by "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  In reversing the lower court, Jordan held that the Marshall's actions in that case were "discretionary" regardless of whether the actions could be characterized as ministerial or discretionary in nature and that it would be unwise to "engage in a case by case determination" of immunity based upon ministerial versus the discretionary nature of a particular act challenged.  As the Defendant has met the first criteria, the burden shifts to the Plaintiff to show a lack of good faith by proving that the actions undertaken by this Defendant violated clearly established law.  To overcome this enormous burden, a Plaintiff must come forward with particularized facts demonstrating why the public official is not entitled to claim that defense. Anderson v. Creighton, 483 U.S. at 646; Harlow, 457 U.S. at 818.

As the Eleventh Circuit has espoused, general propositions "have little to do with the concept of qualified immunity." Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir. 1987); Crawford-El v. Britton, U.S., 118 S.Ct. 1584, L.Ed.2d (1998) as articulated in Muhammad:

> The words "clearly established ... constitutional right" may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of the claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a

clearly established right. The right must be sufficiently particularized to put potential Defendants on notice that their conduct probably is unlawful.

839 F.2d at 1425, quoting Azeez v. Fairman, 795 F.2d 1296, 1301 (7th Cir. 1986).

Moreover, the Eleventh Circuit, in Barts v. Joyner, 865 F.2d 1187 (11th Cir. 1989), further clarified this concept by stating that the question concerning qualified immunity must be sharply focused:

> The question in this case is not whether it is clearly established that unreasonable seizures are prohibited; they are. Nor is the question whether probable cause is necessary for a lawful warrantless arrest; it is. Nor is the question whether an involuntary trip to the police station can violate the fourth amendment; it can. The question in this case is far more sharply focused: in March 1983, was it clearly established in this circuit that it was an unconstitutional seizure for a single police officer - shortly after a murder - to have a person in a public place accompany him (along with other family members who were potential witnesses) to police headquarters for further questions, where the person had initiated contact with law enforcement officials by going to a police station to report the murder, had claimed to have seen the shooting and the assailant who was still at large, had remained in the officer's presence while willingly assisting with the investigation, and never objected to traveling to headquarters? The answer is No.

In Lassiter v. Alabama A& M University, 28 F.3d 1146, 1150 (11th Cir., 1994) (en banc), the Court commented that:

> "The most common error we encounter, as a reviewing court, occurs on this point: Courts must not permit Plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights'".

In Alexander v. University of North Florida, 39 F.3d 290 (11th Cir. 1994), the Eleventh Circuit observed: "As we explained in Lassiter v. Alabama A & M University, 28 F.3d 1146 (11th Cir. 1994)(en banc), qualified immunity for government officials is the rule, liability and trials for liability the exception." Moreover, in Belcher v. City of Foley, Alabama, 30 F.3d 1390, 1400 (11th Cir. 1994), the Court found that "law is clearly established by holdings, not by inferences from language in opinions." As if to

16

strengthen this already straightforward rule, the Eleventh Circuit reiterated that in order for a law to be "clearly established", the law by which officials should be evaluated must be 1) pre-existing; 2) obvious and 3) mandatory.   Hill v DeKalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994).  Qualified immunity must focus on the ". . . actual, on the specific, on the details of concrete cases".  Lassiter 28 F3d 1146, 1150 (11th Cir 1994).  "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases" Adams v. St. Lucie County Sheriff's Dept., 962 F.2d 1563 (11th Cir. 1992).

There is no cause of action under the Fourteenth Amendment for discrimination unless the Plaintiff establishes the intent to discriminate by the Defendant McDonnell. See, e.g. Mencer v. Hammonds, 134 F. 3d 1066 (11th Cir. 1998); see also Parks v. City of Warner Robbins, Georgia, 43 F. 3d 609, 619 (11th Cir. 1995).

The Plaintiff's burden in establishing a constitutional violation is much steeper than that required to show a Title VII violation. Here, the Plaintiff has neither suffered a constitutional deprivation nor has she properly pleaded a constitutional claim. Quite simply, she has even failed to allege "the existence of a clear, factually defined, well-recognized right of which a reasonable [official] should have known." Barts, 865 F. 2d at 1190 (citing Clark v. Evans, 840 F. 2d 876 (11th Cir. 1988)).  Hendricks simply has pled that other male corrections officers are allowed to carry "pocket" knives and because of this, she was denied equal protection. However, it is quite clear that she was dismissed as a result of her pulling a knife on another officer in the parking lot area of the Kilby Correctional Facility.

Hendricks does attempt to claim in her deposition that there were other purported

17

incidents that were similar to hers and the male officers were not fired. However, there is

no substantial evidence supporting her surmise, and even if there were, the expressed

incidents are not clearly similar in nature. Nor has Hendricks satisfied the mandate that:

> ....'' 'the right the official is alleged to have violated must have been
> 'clearly established' in a more particularized, and hence more relevant,
> sense: The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he was doing violates that right.'
> Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L.Ed. 2d
> 523 (1987).

Barts, 865 F. 2d at 1190. "For purposes of qualified immunity, the plaintiff must do more

than simply make 'general, conclusory allegations of some constitutional violation or []

state broad legal truisms'. Thus, Hendricks must show that McDonnell had an

understanding that his actions were wrong and not just in response to Hendricks'

outrageous conduct in the parking lot. She has failed to do so.

Defendant McDonnell agrees that the right to be free from gender discrimination

is clearly established and was clearly established at all times pertinent to this lawsuit.

Generalizations, however, have little to do with qualified immunity. Muhammah, 839 F.

2d at 1424 . "Qualified immunity protects government officials performing discretionary

functions from civil trials (and the other burdens of litigation, including discovery) and

from liability if their conduct violates no 'clearly established statutory or constitutional

rights of which a reasonable person would have known." Lassiter, 28 F. 3d at 1149

(quoting Harlow 457 at 818, 102 S. Ct. at 2738. Hendricks has shown absolutely no

evidence of Defendant McDonnell doing anything which would cause him not to be

shielded by qualified immunity. "For qualified immunity to be surrendered, pre-existing

law must dictate, that is, truly compel (not just suggest or allow or raise a question

about), the conclusion for every like-situated, reasonable government agent what the

defendant is doing violates federal law in the circumstances." <u>Lassiter,</u> 28 F. 3d at 1150.

In order to determine qualified immunity, McDonnell must first establish that he was acting in his discretionary authority. That burden is exceedingly light. <u>Jordan</u> In sum, it is clear that McDonnell was doing so when he made the decision to recommend dismissal of Hendricks as a result of her improper behavior in the parking lot. Once that hurdle is met, the burden then shifts to Hendricks to come forward with fact specific cases showing that the acts taken by McDonnell were clearly in violation of Hendricks rights. The Plaintiff has not met that burden. It is clear that there are not fact specific cases which would have placed McDonnell on notice that his actions were unconstitutional.

As the Supreme Court recently stated regarding improper motive cases such as this one, "[w]hen a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." <u>Crawford-El,</u> 118 S.Ct. Furthermore, when intent is at issue, as it is here, "the primary focus is not on any possible animus directed at the Plaintiff; rather, it is more specific, such as intent to disadvantage all members of a class that includes the plaintiff....or to deter public comment on a specific issue of public importance." <u>Id.</u> at 1594 (internal citation omitted) "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated." <u>Id.</u> at 1592 Qualified immunity bars the recovery of any money damages against McDonnell in is individual capacity because his conduct was objectively

19

reasonable and he would have reached the same decisions regarding the plaintiff.

## V. COMPLAINT AND AMENDED COMPLAINT FAILS TO SATISFY HEIGHTENED PLEADING STANDARD

Hendricks' 42 U.S.C. § 1983 claims are due to be dismissed. From its inception, however, the complaint, and amended complaint, have stayed the same in one fatal respect. It is a "shotgun pleading," a practice universally condemned in the Eleventh Circuit. See, e.g. GJR Investments, 132 F. 3d 1359, 1368 (11th Cir. 1998); Oladeinde v. City of Birmingham, 963 F. 2d 1481, 1483-84 911th Cir. 1992), cert.denied sub nom. Deutsche v. Olaideinde , 507 U.S. 987. 113 S. Ct. 1586, 123 L. Ed. 2d. 153 (1993); Pelletier v. Zweifel, 921 F. 2d 1465, 1518 (11th Cir.), cert denied, 502 U.S. 855, 112 S. Ct. 167, 116 L. Ed. 2d 131 (1991). Additionally, she brings these "shotgun pleadings" against McDonnell and the Alabama Department of Corrections assumingly both in their individual and official capacities. Of course, § 1983 requires any suit to be maintained only against a "person". It cannot be a lawsuit against the state or any of its agents as they would be part of the state and not a person. Thus, any claims brought under 42 U.S.C. § 1983 can only be brought against McDonnell in his individual capacity. All others are due to dismissed.

Exacerbating the plaintiff's problems is the fact that she has brought a civil rights action under § 1983. For just suits, the Eleventh Circuit requires much more than the notice pleading provided in Rule 8(a). The Eleventh Circuit requires much more pleading standard when suing government officials in their individual capacity under 42 U.S.C. § 1983. As critically observed by the Eleventh Circuit; 'We stress at this point ….that the heightened pleading requirement is the law of this circuit." GJR Investments, Inc. v.

County of Escambia, Florida, 132 F. 3d 1359, 1368 (11th Cir. 1998).

     The Court described the GLR plaintiff's complaint:

> The district court's error in finding an equal protection claim probably stemmed at least in part from the difficulty in deciphering GJR's complaint, which unfortunately is classic example of what is referred to in this circuit as a "shotgun pleading." Se, e.g. Olaideinde v. City of Birmingham, 963 F. 2d 1481, 1483-84 (11th Cir.1992); Pelletier v. Zweifel, 921 F. 2d 1465, 1518 (11th Cir. 1991). The complaint presents scores of allegations regardless of their relevance and incorporates them in entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional "rights."

Id. at 1368. Applying the heightened pleading standard, the court stated; 'the district court was too lenient with GLR's shotgun complaint; application of heightened pleading standard is one was to deal summarily with the pleadings of this kind. Id. Ultimately, the court found that defendants entitled to qualified immunity, reversed the district court's decision, and remanded the case with instructions to dismiss with prejudice all claims for damages against the defendants. Id. at 1370

     In the case *sub judice,* the factual allegations in the complaint and amended complaint are merely citations of generalizations and conclusions. It is not the job of McDonnell or of this Court to divine from the complaint constitutional violations sufficient to support the plaintiff's section 1983 claim. See GLR Investments, 132 F. 2d at 1368. No one denies that the plaintiff was dismissed because of her actions in the parking lot of February 10, 2005 but her pleading falls woefully short of what is required for claims against McDonnell in his individual capacity. In sum, the 1983 claim [claims against McDonnell in his individual capacity] is due to be dismissed as well.

## VI. NO CAUSAL CONNECTION

Hendricks's complaint is comprised of conclusory allegations made against the Defendants. Although Defendant McDonnell is identified by name, no specific allegations or description of his actions is offered in the body of this lawsuit to show his involvement or knowledge surrounding the period of time in question. In fact, the plaintiff has failed to establish the required casual connection between the alleged constitutional violation and any act or omission by Defendant McDonnell. See Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1987). The language of 42 U.S.C. § 1983 requires proof of a casual connection between the action taken by the defendants and the alleged constitutional deprivation. Jones v. Preuit & Mauldin, 851 F. 2d 1321 (11[th Cir.] 1988). Further more, Hendricks's allegations fail to acknowledge that only the Commissioner of the Department of Corrections has the power to hire and fire and suspend. McDonnell can do no more than make recommendations (See Exhibit "B," Deposition of McDonnell, p.)

## VII. CLAIMS ARE BASED ON RESPONDEAT SUPERIOR

In order to state a claim against the Defendants, the Plaintiffs must show personal involvement by each Defendant. Zatler v. Wainwright, 802 F.2d 397(11th Cir. 1986); Howell v. Tanner, 650 F.2d 610(5th Cir.1981). Respondeant Superior is not available under 42 U.S.C. §1983. The Plaintiffs have failed to show personal involvement on the part of all Defendants.

## VIII. CLAIMS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY

The Plaintiffs have sued the Defendants in their official capacity. In their official capacity, the Defendants are barred from suit by virtue of the immunity stated in the Eleventh Amendment. <u>Alabama v. Pugh</u>, 438 U.S. 781, 98 S. Ct. 3057, 57 L.Ed.2d 1114(1978). Thus, the Defendants are entitled to judgment in their official capacity based on Eleventh Amendment immunity.

Hendricks has brought claims against Defendant McDonnell in his official capacity and against the DOC. Damage claims against these defendants, however, cannot be maintained and are due to be dismissed.

Specifically, Hendricks may attempt to hold McDonnell in his official capacity, and the DOC, liable for damages under 42 U.S.C. § 1983. If so, it is well settled law that absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens. U.S. Constitution, Amend. XI; see <u>e.g. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.</u> 506 U.S. 139, 113 S. ct. 684, 21 L. Ed. 2d 605 (1993); <u>Welch v. Texas Department of Highways and Public Transportation,</u> 483 U.S. 468, 107 S. Ct. 2941, 97 L. Ed 2d 389 (1987). The Supreme Court has specifically held that a 42 U.S.C. § 1983 claim against state government to be barred by the Eleventh Amendment. <u>Quern v. Jordan,</u> 440 U.S. 332, 340, 99 S. Ct. 1139, 1144, 59 L. Ed. 2d 358 (1979) (there can be no doubt, however, that such [section 1983] suit against the State [of Alabama] and its Board of Correction is barred by Eleventh Amendment.....') quoting <u>Alabama v. Pugh,</u> 438 U.S. 781, 98 S. Ct. 3057, 57 l. Ed 2d 1114 (1978).

Congress has not abrogated Eleventh Amendment immunity in 42 U.S. C. § 1983

lawsuits. See e.g. Carr v. City of Florence, 916 F. 2d 1251 (11th Cir. 1990). Nor has the

State of Alabama waived its Eleventh Amendment immunity in section 1983 suits.

Therefore, all claims for damages against any state entity or individual defendant in their

official capacity under 42 U.S.C. § 1983 should be dismissed. If, however, all claims by

Hendricks are solely for prospective injunctive relief, then the Eleventh Amendment

would not "insulate state officials acting in their official capacities." Edelman v. Jordan,

415 U.S. 651, 664-71, 94 S. Ct. 1347, 1356-60, 39 L. Ed. 2d. 662 (1974). Accordingly,

McDonnell and the DOC request that this Honorable Court enter a judgment in their

favor.

Respectfully submitted,


Kim T. Thomas (THO115)
General Counsel
Assistant Attorney General


/s/ Greg Biggs
Greg Biggs (BIG004)
Assistant General Counsel
Assistant Attorney General


**OF COUNSEL:**
Alabama Department of Corrections
301 S. Ripley St.
Post Office Box 301501
Montgomery, Alabama 36130
(334) 353-3885

24

## CERTIFICATE OF SERVICE

I do hereby certify that on the 22nd of May, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

I also hereby certify that I have served a copy of the foregoing pleading upon:

**A. WESLEY PITTERS, P.C.**
**1145 South Perry Street**
**P.O. Box 1973**
**Montgomery, AL 36102-1973**

by placing same in the United States Mail, first class postage prepaid and properly addressed this 22nd day of May, 2006.

/s/ Greg Biggs
Greg Biggs (BIG004)
Assistant General Counsel