IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FELICIA S. HENDRICKS,              )
                                  )
            Plaintiff,            )
                                  )
    v.                            )    CASE NO. 2:05-CV-00714-WKW
                                  )
TERRANCE MCDONNELL, et al.,        )
                                  )
            Defendants.           )

## ORDER

This case is before the Court on the defendants' Motion for Summary Judgment (Doc. # 34). For the reasons set forth below, the motion for summary judgment is due to be granted.

## I.  FACTS AND PROCEDURAL HISTORY

This case arises out of the termination of Plaintiff Felicia S. Hendricks' ("Hendricks") employment at Kilby Correctional Facility ("Kilby").  Hendricks filed this action against Terrance McDonnell ("Warden McDonnell"), the Warden at Kilby, and the Alabama Department of Corrections ("DOC"), alleging § 1983 claims for the denial of equal protection and due process in violation of the Fourteenth Amendment.  Defendants filed a motion for summary judgment, which is opposed by Hendricks.  The Court reiterates all of the relevant facts as contained in the parties' evidentiary submissions.  Where a fact is in dispute, it is portrayed in the light most favorable to Hendricks.

Hendricks concedes that "[t]he underlying facts regarding the occurrence that forms the basis of the plaintiff's termination" are "virtually undisputed."  (Pl. Resp. Br. 2.)  After her shift ended on February 10, 2005, Hendricks, a Correctional Officer I, had a verbal altercation with a co-worker, LaToya Nelson, in the parking lot of Kilby.  Hendricks bumped Ms. Nelson in the chest.  Other

correctional officers tried to intervene, but Hendricks and Ms. Nelson got into Ms. Nelson's car to continue their conversation. Another co-worker, Likenya Colbert, intervened in the dispute between Hendricks and Ms. Nelson. Ms. Colbert was aggressive toward Hendricks, and Hendricks retrieved a pocket knife from her vehicle. Hendricks gave conflicting statements regarding whether the knife was open. Yet another officer grabbed the knife from Ms. Hendricks and pushed her into her car to leave.

The DOC took witness statements on February 10 and 11, 2005. The Investigation and Intelligence Division of the DOC performed an investigation. On February 11, 2005, Hendricks was placed on mandatory leave. On February 18, 2005, Warden McDonnell served notice on Hendricks of a pre-dismissal conference, which outlined the investigation and the violations of Administrative Regulations 207 and 208.[1] Charges under these regulations involve, among other things, engaging in fighting, assault, physical violence, and disruptive behavior; failure to observe all laws, rules, and regulations; carrying weapons onto the grounds of DOC state property without authorization; and engaging in disgraceful conduct that adversely affects employees and one's job effectiveness.

Hendricks filed a grievance on February 17, 2005.[2] Warden McDonnell conducted a pre-dismissal conference on March 2, 2005. Hendricks was permitted to tell her version of the events. Warden McDonnel documented the meeting and his reasons for recommending to the Commissioner

---

[1] Regulations 207 is entitled "Standards of Conduct." (Def. Ex. A.) The regulation purports to establish guidelines for "the Standards of Conduct to govern employee behavior and work performance." (*Id.*) The DOC's policy is "that all employees maintain the highest level of behavior and efficiency, reflect the best image of public service, and uphold with integrity the public confidence entrusted in them." (*Id.*) Regulation 208 is entitled "Positive (Progressive) Employee Discipline." (*Id.*) It specifies the DOC's policy "for the administration of a positive, progressive employee discipline program . . ." and classifies offenses and their corresponding consequences. (*Id.*)

[2] In the "nature of complaint" section on the grievance complaint form, Hendricks described the events of February 10, 2005. She stated that she felt threatened and took a small knife out of her car to ward off the aggression of others. The remedy she sought was a thorough investigation of these events.

of the DOC that Hendricks be dismissed.  One of the documents presented to the Commissioner was Hendricks' statement wherein she admitted wrongdoing that deserved to be punished.  On March 4, 2005, Hendricks received a copy of the dismissal letter from the Commissioner.  She was notified that she could appeal her termination to the State Personnel Department within ten days; however, Hendricks did not file an appeal.  Rather, on March 17, 2005, she filed another grievance complaining about "[b]eing singled out/dismissed for having a small pocket knife on state property." (Def. Ex. A.)  Hendricks filed her complaint in the instant action on August 1, 2005.

## II.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing

3

the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

Hendricks brings this § 1983 action alleging that the defendants discriminated against her based on her sex and denied her due process. Defendants argue several bases for summary judgment.[3]

### A.    *Equal Protection*

Hendricks alleges that she was denied equal protection by being terminated from her employment. She asserts that as a woman she was treated differently than male corrections officers

---

[3] The Court notes that the defendants claim various immunity defenses. Because the analysis demonstrates that no constitutional violation occurred, effectively disposing of all claims on the merits, the Court will not address immunity.

4

who engaged in similar conduct but who were not subjected to the harsh disciplinary action of dismissal.  The defendants assert that Hendricks cannot prove a prima facie case of discrimination.  The Court agrees.

To prevail on her claim, Hendricks must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of animus based on sex.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *see, e.g., Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 771-772 (11th Cir.1982).  Because Hendricks attempts to prove her claim through circumstantial evidence, her claim is analyzed under the burden-shifting analysis found in  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't  of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[4]  Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff must create an inference of discrimination by establishing a prima facie case.  A prima facie case creates a presumption of discrimination.  The employer must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted).  The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.  *Id*.

To establish a prima facie case of discrimination, the plaintiff generally must establish that (1) she is a member of a protected class; (2)  she was subjected to an adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job.  *See Rice-Lamar v. City of Ft. Lauderdale, Fla*., 232 F.3d 836, 842-43 (11th Cir.

---

[4]  The analysis set forth by the Supreme Court for use in Title VII cases involving claims of intentional discrimination has been adopted by the Eleventh Circuit for discrimination cases arising under section 1983.  *See Cross v. State of Alabama*, 49 F.3d 1490, 1508 (11th Cir. 1995); *Lee*, 684 F.2d at 773.

2000); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). However, the prima facie case differs slightly for cases involving alleged discrimination in the application of discipline for violation of work rules. *See Jones v. Gerwens*, 874 F.2d 1534, 1539-1540 (11th Cir. 1989). Thus, Hendricks must show that "(1) she is a member of a protected class; (2) she has engaged--either (a) disputedly or (b) admittedly--in misconduct similar to persons outside the protected class; and (3) that similarly situated employees outside the plaintiff's protected class received more favorable treatment." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6, *modified in non-relevant part on denial of reh'g*, 151 F.3d 1321 (11th Cir. 1998) (adjusting the elements of the prima facie case as delineated in *Gerwens*). The third element may also be stated as "the disciplinary measures enforced against [the plaintiff] were more severe than those enforced against the other persons who engaged in similar misconduct." *Gerwens*, 874 F.2d at 1540.

The only element in dispute here is whether Hendricks was treated differently than similarly situated male employees. To make a comparison of the treatment received by the plaintiff to that received by male employees, Hendricks must show that she and the male employees are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). In determining whether the male employees are similarly situated, it is necessary to consider whether the male employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Id.*

A similarly situated employee in this case would be a male correctional officer who threatened the physical assault of another correctional officer with a deadly weapon while on the correctional facility property. Hendricks prepared a list of DOC employees whom she understood

6

to have engaged in similar conduct to her own but whom were punished less severely.[5] (Pl. Ex. B.) Hendricks identified eleven incidents involving at least as many corrections officers. Despite Hendricks' claims, none of the corrections officers identified are appropriate comparators. The Court addresses each alleged comparator in turn.[6]

Hendricks first identified an incident that involved Lt. Browning: "1. Lt. Eddie Browning was arrested and charged with stalking and sexual harassments in an event that was highly televised. He was immediately transferred to Staton Correctional Facility." (*Id*.) When asked during her deposition, Hendricks could not identify when the incident occurred, where Lt. Browning was arrested, or whether any weapons were involved. (Hendricks Dep. 24-25.) She admitted that the stalking and sexual harassment occurred at an apartment complex in Montgomery. (*Id*. 25.) Because this incident did not involve a physical assault on a co-worker on workplace property, Lt. Browning is not similarly situated.

Hendricks next identified Lt. Napier: "2. Lt. Victor Napier had problems with his wife where as his wife came to the facility and picked him up. Lt. Napier abandoned his post. He was the only supervisor on duty and left the facility unsupervised." (Pl. Ex. B.) Lt. Napier's actions may have been a violation of Kilby's regulations; however, his actions did not involve a physical altercation with a co-worker. (Hendricks Dep. 41.) Thus, Lt. Napier is not similarly situated.

Sgt. Crow is listed as a comparator: "3. Sgt. John Crow assaulted his wife about a relationship with an inmate. Nothing was done." (Pl. Ex. B.) Hendricks has no knowledge that this

---

[5] The list is, in and of itself, inadmissible hearsay. However, because Hendricks testified to the substance of this list at her deposition, the Court will address the alleged comparators on Hendricks' list.

[6] The list contains numerous typographical and grammatical errors. The Court quotes the list without editing the errors.

assault occurred at Kilby or whether a weapon was used.  (Hendricks Dep. 42.)  Sgt. Crow is not similarly situated.

The next incident on Hendricks's list involves two corrections officers: "4.  Sgt. William Miller was involved in a relationship with COI Kenneth McMann's wife (Tracy McMann) while both were employed at the same institution.  Which eventually led to a dispute and a transfer."  (Pl. Ex. .)  Hendricks has no knowledge as to whether these two officers had a physical altercation or whether a weapon was involved.  (Hendricks Dep. 26.)

Hendricks identifed female officers as comparators: "5.  Sgt. Patrica Davis and COI Johnnie Dumas were both involved in a physical altercation that involved a weapon (radio) at the Montgomery Work Center.  Both Davis and Dumas were involved in a love affair with Warden Jeffery Williams.  Both Officers were transferred to other institutions."  (Pl. Ex. B.)  Similarly situated officers must be outside of the plaintiff's protected class or else there can be no inference of discrimination.  *See Jones*, 137 F.3d at 1311 n.6 (holding that the third element of the prima facie case is that "similarly situated employees *outside the plaintiff's protected class* received more favorable treatment").  As women, officers Davis and Dumas are not similarly situated.

Hypothetically, officers Glenn and Potterfield might have been similarly situated: "6.  COI Jimmy Glenn and COI Albert Potterfield were involved in a physical altercation where to a weapon (Knife) was used in the Receiving Unit at Kilby."  (Pl. Ex. B.)  However, Hendricks admitted in her deposition testimony that she had no personal knowledge of the incidents identified in numbers two, three, and six on the list, which includes the incident involving officers Glenn and Potterfield. (Hendricks Dep. 36-37.)  At her deposition Hendricks was asked, "The only basis that you have for this allegation is statements from Officer Parks, correct?"  She answered, "Yes, sir."  (*Id.* 43.)  The

8

record evidence shows that Henricks' allegation about officers Glenn and Potterfield is not based on admissible facts or evidence, but a rumor.[7] Thus, Hendricks has merely presented unsubstantiated allegations that alone are not enough to withstand a motion for summary judgment. *See Celotex*, 477 U.S. at 322. This bare allegation cannot be used to establish that Hendricks was treated less favorably than similarly situated Kilby employees.

Hendricks personally observed one of the incidents on her list: "7. COI Jerry Redic and COI William Scott were involved in a physical / verbal altercation in the Segregation Unit and Kilby Correctional Facility." (Pl. Ex. B.) According to Hendricks, officers Redic and Scott argued over the use of a fan to cool their respective areas and "[t]hen it turned to a little tussle . . . where they just locked up, and then they was broken up." (Hendricks Dep. 32-33.) No weapon was involved. (*Id*. 33.) Therefore, officers Redic and Scott are not similarly situated.

Other female officers were alleged to be comparators: "8. COI Mary Holmes and COI Debra Caldwell were involved in an altercation at the Montgomery Work Center. COI Holmes was transferred to another institution after COI Caldwell threatened to assault COI Holmes with a weapon (hand-held-radio)." (Pl. Ex. B.) As stated above, female officers cannot be comparators.

The remaining incidents on Hendricks' list involve domestic violence situations:

> 9. COI Willie Lawrence was involved in a physical altercation with his wife after his wife had an involvement with a fellow employee at the sheriff's department. The incident led to COI Lawrence getting a domestic violence charge.
> 10. COI Charles Caldwell received a Domestic Violence charge after assaulting his wife because of an affair that COI Caldwell was having with Nurse Katie Bailey a former employee at the D.O.C. No actions taken.

---

[7] This statement is hearsay and is not properly before the Court. Rule 56(e) of the Federal Rules of Civil Procedure unambiguously states that all affidavits opposing summary judgment must be based upon "personal knowledge, [and] shall set forth facts as would be admissible in evidence . . . ." Admissible evidence, as explained in the Federal Rules of Evidence, does not include hearsay. Fed.R.Evid. 801(c).

11.  COI Bernard McClain was involved in an altercation with his girlfriend which led up to his arrest and charged with domestic violence.

(Pl. Ex. B.)  Although the officers involved in these incidents engaged in physical assaults, they are not similarly situated because the assaults did not involve a co-worker and a weapon and did not occur at work.

Hendricks also submitted an unsworn statement that she observed an officer use a pocketknife to cut down an inmate who was attempting suicide.  (Pl. Ex. A.)  This officer, who had not physically assaulted anyone, is not similarly situated.

Having failed to meet her burden of proving that she was similarly situated to a more favorably treated male employee, Hendricks has not established a prima facie case of discrimination. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  *Holifield*, 115 F.3d at 1562. Accordingly, the motion for summary judgment is due to be granted on these grounds, and Hendricks' equal protection  claim is due to be dismissed.

**B.     *Due Process***

Hendricks also asserts that she was denied due process when the DOC did not follow its grievance procedure.  Defendants admit that Hendricks had a property right in her continued employment with DOC; however, they argue that Hendricks received several notices and opportunities to be heard.  Hendricks does not make any effort to establish her due process claim in her opposition to the summary judgment motion.  The Court finds that summary judgment on the due process claim is due to be granted.

10

Because the defendants do not contest it, the Court assumes that Hendricks had a protectible property interest in her DOC employment. The Court must examine the process that accompanied the deprivation of Hendricks' property interest and decide whether the procedural safeguards built into the process are constitutionally adequate. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Generally, due process requires some notice and an opportunity to be heard prior to the deprivation of a protected interest. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "[O]ral notice and an opportunity to respond orally is sufficient in the pretermination context." *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir 1985). Procedural due process in the post-termination context involves something more. "[A] formal, post-termination, due process hearing should provide the terminated employee with the following: a hearing before an impartial decision-maker, an opportunity to confront and cross-examine the accuser in the presence of the decision-maker, an opportunity to present evidence, and the presence of counsel." *Reeves v. Thigpen*, 879 F. Supp. 1153, 1174 (M.D. Ala. 1995).

In the pretermination context, Hendricks had notice of the charges against her and the opportunity to tell her side of the story not only to the investigators but also to the Warden. Furthermore, she had the benefit of an investigation conducted by the Investigation and Intelligence Division of the DOC. Hendricks appears to claim that the investigation was not conducted fairly, but she offers no evidence to substantiate this claim. In any event, the fairness of the investigation is a moot point where Hendricks admitted her wrongdoing. Hendricks also seems to claim that the DOC should have followed its grievance procedure in addition to its termination procedure. The substance of Hendricks' grievances is identical to that of her pretermination investigation, i.e., the February 10, 2005 altercation. Due process does not require a separate, parallel grievance procedure

11

prior to Hendricks' termination. This is especially so where the Court must consider the government's "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

By not appealing the Commissioner's decision to terminate her employment, Hendricks chose not to avail herself of the post-termination procedures. Thus, the sufficiency of those procedures is not at issue here.

Accordingly, the motion for summary judgment is due to be granted on these grounds, and Hendricks' due process claim is due to be dismissed.

### V.  CONCLUSION

Accordingly, it is ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 34) is GRANTED, and all claims are DISMISSED with prejudice.

An appropriate judgment will be entered.

DONE this the 11th day of September, 2006.

　　　　/s/　W.  Keith Watkins　　　　
UNITED STATES DISTRICT JUDGE